**FILED**

SEP 2 2 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. [UNDER SEAL], | ) Case No.: 2:09cv1858 FCD GGH<br>)<br>) |
| Plaintiffs, | ) **FIRST AMENDED COMPLAINT**<br>) |
| v. | ) **DEMAND FOR JURY TRIAL**<br>) |
| [UNDER SEAL], | ) **FILED UNDER SEAL** |
| Defendants. | ) **PURSUANT TO 31 U.S.C.**<br>) **§ 3730(B)(2)**<br>) |



Michael A. Hirst, Esq. CA Bar 131034
Leslie S. Guillon, Esq. CA Bar 222400
HIRST LAW GROUP, P.C.
455 Capitol Mall, Suite 605
Sacramento, CA 95814
Tel: (916) 443-6100
Fax: (916) 443-6700
Attorneys for Qui Tam Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. TIMOTHY HEDIGER and LOIS PEREZ, | No. 2:09cv1858 FCD GGH |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| PRIDE INDUSTRIES, INC., and PRIDE INDUSTRIES ONE, INC., | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(B)(2)** |
| Defendants. | |

1    Plaintiffs Timothy Hediger ("Hediger") and Lois Perez
2  ("Perez"), through their attorneys Hirst Law Group, P.C., on
3  behalf of the United States of America, and based upon personal
4  knowledge, relevant documents, and information and belief, allege
5  as follows:

6  **I.   NATURE OF THIS ACTION**

7    1.   This action alleges that, from 1999 to the present,
8  Defendants PRIDE Industries, Inc., and PRIDE Industries One, Inc.
9  (hereafter collectively "PRIDE" or "Defendant") has knowingly
10 defrauded the United States by: (i) falsely certifying that it
11 has met the required percentage of direct labor hours performed
12 by people with severe disabilities, thereby enabling it to obtain
13 awards of non-competitively bid government contracts to which it
14 was not entitled; (ii) falsely representing to the government in
15 negotiating contract awards that it would pay for employee labor
16 at a rate higher than the amounts it actually paid, and
17 thereafter not disclosing to the government that it was overpaid
18 for labor costs under its contracts; (iii) falsely billing the
19 government for costs expressly disallowed and reimbursed
20 elsewhere in its Fort Bliss contract; (iv) engaging in the
21 illegal soliciting of kickbacks in performance of its Fort Bliss
22 contract; and (v) closing service orders under its Fort Bliss
23 contract by including false and inaccurate information and then
24 retaliating against Plaintiff Perez for objecting to this
25 practice.  PRIDE also retaliated against Hediger for his role in
26 exposing and complaining about the fraud.

27   2.   In doing so, Defendant has knowingly submitted and
28 caused the submission of false and fraudulent claims, and

knowingly made and used false records and statements material to such claims.  The government sustained damages by: awarding contracts that it would not have awarded; paying higher contract award fees than it otherwise would have paid; and paying more for materials and services than it should have.

3.   Defendant's conduct violates the False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA").  As a result of the fraud, Defendant has caused the government to sustain a direct loss of funds and damage to its interests.

4.   The FCA was originally enacted during the Civil War at the request of President Lincoln, who believed that the Union Army was being defrauded by unscrupulous contractors.  The Act was substantially amended by Congress in 1986 and 2009 to enhance the government's ability to recover losses sustained as a result of defendants' fraud.  At those times, Congress determined that fraud against the government was pervasive and that the FCA, which Congress described as the primary tool for combating government fraud, was in need of reform.  Congress intended that the amendments create incentives for individuals with knowledge of fraud against the United States to disclose the information without fear of reprisals or government inaction, and to encourage the private bar to commit legal resources to prosecute fraud on the government's behalf.

5.   The FCA prohibits knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval.  31 U.S.C. § 3729(a)(1)(A).  Additionally, it prohibits knowingly making or using, or causing to be made or used, a false record or statement (i) material to a false or fraudulent claim

or (ii) material to an obligation to pay or transmit money to the government, and prohibits knowingly concealing or improperly avoiding or decreasing such an obligation to pay or transmit money to the government.  31 U.S.C. §§ 3729(a)(1)(B), (a)(1)(G). Any person who violates the FCA is liable for a civil penalty of up to $11,000 for each violation, plus three times the loss sustained by the United States.  31 U.S.C. § 3729(a); 64 Fed. Reg. 47099, 47103 (1999).

6.    The FCA defines "knowing" as having actual knowledge that the information is false, or acting with a deliberate ignorance of, or reckless disregard for, the truth or falsity of the information.  31 U.S.C. § 3729(b).

7.    The statute allows any person having information about an FCA violation to bring an action on behalf of the United States, and to share in any recovery obtained.  The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the Defendant during that period) to allow the government time to conduct its own investigation and to determine whether to join the suit.

8.    Based on the FCA, qui tam plaintiffs ("Relators") Hediger and Perez seek to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which the Defendant's misconduct has extended.

## II.  PARTIES

9.    Relator Hediger is a resident of Lincoln, California. Hediger led the Internal Audit Department at PRIDE from February 2007 to September 2009.  At that time, after complaining about

1  fraudulent conduct he had observed, Hediger was demoted to
2  Accounting Project Analyst and his supervisor was changed from
3  PRIDE's Chief Financial Officer to the company's Controller.   In
4  October 2009, in further retaliation against Hediger, he was
5  terminated.   While working for PRIDE, Hediger gained direct,
6  personal, and independent knowledge of the matters set forth
7  herein.

8       10.   Relator Perez is a resident of El Paso, Texas.   Perez
9  was employed as a Computer Analyst I with Defendant PRIDE from
10  September 11, 2007 until March 13, 2009.   She was terminated by
11  Defendant after inquiring, gathering evidence, and questioning
12  PRIDE management about fraudulent practices in PRIDE's
13  performance of its Fort Bliss contract.   While working for PRIDE,
14  Perez gained direct, personal, and independent knowledge of the
15  matters set forth herein.

16      11.   Defendant PRIDE is composed of two California entities
17  with headquarters located at 10030 Foothills Boulevard in
18  Roseville, California.   PRIDE Industries, Inc., claims that it
19  qualifies as a 26 U.S.C. § 501(c)(3) charitable organization by
20  representing that it normally receives more than 33 1/3% of its
21  support from contributions, memberships, and gross receipts from
22  activities related to its charitable functions.   PRIDE Industries
23  One, Inc., is an organization that supports a related nonprofit,
24  PRIDE Industries, Inc.   PRIDE provides integrated facilities
25  management services for federal, state, and local governments as
26  well as commercial and industrial customers.   It also provides
27  manufacturing and logistical services for customers nationwide.
28  PRIDE claims that it is the largest employer of people with

disabilities in America.

12.   The identities of the remaining defendants who may have defrauded the United States are presently unknown.   Both listed Defendants and such additional defendants served as contractors, agents, partners, and/or representatives of one and another in the fraud and were acting within the course, scope and authority of such contract, agency, partnership and/or representation for the conduct described herein.

**III.  JURISDICTION AND VENUE**

13.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

14.   Under 31 U.S.C. § 3730(e), there has been no public disclosure of the "allegations or transactions" in this Complaint.   To the extent there has been any such disclosure, Relators Hediger and Perez constitute "original sources" pursuant to 31 U.S.C. § 3730(e)(4).

15.   Personal jurisdiction and venue are proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a), as the Defendant or its agents can be found, resides, transacts business, or otherwise engaged in fraudulent conduct within the district.

**IV.   INTRODUCTION AND BACKGROUND**

**A.   PRIDE**

16.   In addition to its work for private entities, PRIDE performs work on multiple military bases throughout the country. Its facility services include custodial, building maintenance,

First Amended Complaint - Filed Under Seal        6

1  landscaping, commissary operations, food service, and
2  administrative services.  In its 2008 Annual Report, PRIDE
3  reported that it had in excess of 4,300 employees, including more
4  than 2,700 employees with disabilities.

**B.    The AbilityOne Program**

6     17.  AbilityOne is a federal program, formerly known as the
7  Javits-Wagner-O'Day ("JWOD") program, that is the largest source
8  of jobs for blind or otherwise severely disabled persons.  The
9  program uses the purchasing power of the federal government to
10 buy products and services from participating, community-based
11 nonprofit organizations (known as "agencies") dedicated to
12 training and employing individuals with disabilities.

13    18.  The Committee for Purchase From People Who Are Blind or
14 Severely Disabled (the "Committee") is the independent federal
15 agency that administers the AbilityOne program.  To carry out its
16 mission, the Committee works closely with two private
17 organizations, NISH (formerly known as the "National Industries
18 for the Severely Handicapped") and National Industries for the
19 Blind ("NIB"), to advise the more than 600 nonprofit agencies
20 that obtain federal contracts through the program.  NISH and NIB
21 assist the participating nonprofit agencies by, among other
22 things, evaluating agency capabilities, providing technical
23 assistance, and providing assistance in complying with the
24 program law and federal contract provisions.  NISH is funded
25 through receipt of a percentage of the base contract award fees
26 earned by the agencies it advises.  Thus, the higher the contract
27 award paid to an agency, such as PRIDE, the higher the payment to
28 NISH.

First Amended Complaint - Filed Under Seal        7

1     19.   The JWOD Act, 41 U.S.C. §§ 46-48c, is the public law
2  governing the AbilityOne program.  The Act provides special
3  contracting priorities to AbilityOne participants.  JWOD provides
4  that, for government entities, all commodities or services placed
5  on the Committee's Procurement List must be procured from a
6  nonprofit agency employing persons who are blind or have other
7  severe disabilities, at a price established by the Committee, if
8  that commodity or service is available within the normal period
9  required by that governmental entity.  41 C.F.R. § 51-1.2(a).
10  Except for Federal Prison Industries, Inc., the participating
11  AbilityOne participants have priority over any other supplier of
12  the government's requirements for commodities and services on the
13  Committee's Procurement List.  *Id.*

14     20.   Federal regulations define terms applicable to the
15  AbilityOne program.  The term "severely handicapped individuals"
16  or "persons with severe disabilities" ("PWD") means "a person
17  other than a blind person who has a severe physical or mental
18  impairment (a residual, limiting condition resulting from an
19  injury, disease, or congenital defect) which so limits the
20  person's functional capabilities (mobility, communication, self-
21  care, self-direction, work tolerance or work skills) that the
22  individual is unable to engage in normal competitive employment
23  over an extended period of time."  41 C.F.R. § 51-1.3.  A
24  "qualified nonprofit agency for the severely handicapped" is
25  defined as an organization "which, in furnishing commodities and
26  services (whether or not the commodities or services were
27  procured under these regulations), during the fiscal year employs
28  persons with severe disabilities (including blind) for not less

First Amended Complaint - Filed Under Seal       8

1  than 75 percent of the work-hours of direct labor required to
2  furnish such commodities or services."  *Id.*

3      **C.   Anti-Kickback Act**

4      21.   Federal law prohibits the offering of kickbacks in
5  government contracts.  The Anti-Kickback Act of 1986 (41 U.S.C.
6  §§ 51-58) was passed to deter subcontractors from making
7  payments, and contractors from accepting payments, for the
8  purpose of improperly obtaining or rewarding favorable treatment
9  in connection with a government prime or subcontract.
10  Specifically, the Act provides:

11      It is prohibited for any person -

12      (1)   to provide, attempt to provide, or offer to
              provide any kickback;
13

14      (2)   to solicit, accept, or attempt to accept any kickback;
              or

15      (3)   to include, directly or indirectly, the amount of any
              kickback prohibited by clause (1) or (2) in the
16            contract price charged by a subcontractor to a prime
              contractor or a higher tier subcontractor or in the
17            contract price charged by a prime contractor to the
              United States.
18

19  41 U.S.C. § 53; see Federal Acquisition Regulation ("FAR") §
20  3.502-2.

21      **D.   PRIDE's Fort Bliss Contract**

22      22.   On September 11, 2007, PRIDE was awarded a contract for
23  repair and maintenance services at Fort Bliss, an Army base
24  located near El Paso, Texas.  The 5-year contract, W911SG-07-C-
25  0009 (the "Contract"), was awarded under other than full and open
26  competition pursuant to 10 U.S.C. § 2304(c)(5) and the JWOD Act.
27  The initial year's award was for $13,250,879.90 and later
28  increased to $13,374,494.81 for the first year.  The Contract

First Amended Complaint - Filed Under Seal       9

1   provides for a firm, fixed price except for certain expenses
2   related to the purchase of materials.  See Contract, page 62-63,
3   section 52.216-1; page 10, Contract Line Item Number ("CLIN")
4   0001AY.

5      23.   The provisions of the Anti-Kickback Statute were
6   incorporated by reference into the Contract.  Contract, page 58,
7   Section I.

8      24.   The Contract was subject to renegotiation mid-term, and
9   was in fact renegotiated, when PRIDE represented increased labor
10  costs in its performance.

11  **V.   ALLEGATIONS**

12     25.   Relators incorporate by reference and reallege as
13  though fully set forth herein paragraphs 1 - 24.

14        **A.   False Certification of Direct Labor Hours**

15     26.   To participate in the AbilityOne Program, an agency
16  must certify annually to the Committee that 75% or more of its
17  direct labor is performed by people who are blind or severely
18  disabled.  PRIDE regularly submitted an Annual Certification,
19  Committee Form 404 ("Certification"), in which it knowingly and
20  falsely certified that 75 percent or greater of its direct labor
21  hours was performed by severely disabled employees when, in fact,
22  it knew that it did not meet this requirement.  PRIDE knowingly
23  and falsely classified numerous employees as severely disabled
24  who did not meet the applicable definition as set forth in the
25  law.

26     27.   In its Certifications, PRIDE certified that for each
27  PWD, it has "a file containing adequate evidence of disability
28  and an annual review for competitive employability ... verifying

1   that the individual meets the Committee's criteria per 41 C.F.R.
2   § 51-4.3."

3       28.  Nonetheless, PRIDE's own internal records show that, as
4   of November 17, 2008, only 61.3 percent of PRIDE's designated
5   disabled employees working on AbilityOne contracts nationwide
6   (449 of 732 total employees) were classified as "pass" on an
7   audit performed by PRIDE's Human Resources Department to
8   determine whether employees met the requirement of being severely
9   disabled.  The remaining supposedly disabled employees were
10  listed as "fail" (212 employees), "unknown" (4 employees), "not
11  disa" (2 employees), or were left blank (65 employees).

12      29.  In April 2009, Hediger attempted to conduct internal
13  audits at Fort Bliss, Texas, and Edwards Air Force Base,
14  California, to assess the company's reporting of severely
15  disabled direct labor hours.  His audit procedures were to
16  include: (1) meeting face-to-face with each employee individually;
17  (2) reviewing selected employee files to determine if the
18  required forms were present, including an initial doctor's
19  written report, annual doctor's re-evaluation, and a Competitive
20  Employment Assessment ("CEA"); and (3) interviewing selected
21  employees.  An initial and at least annual CEA are required to
22  determine if the employee has the capability for normal
23  competitive employment, which would exclude such an employee as a
24  "severely handicapped individual."  41 C.F.R. § 51-1.3.

25      30.  After arriving at Fort Bliss and beginning his audit,
26  Human Resources staff at Fort Bliss and PRIDE Headquarters raised
27  objections to Hediger's review, especially his review of
28  employees' records.  Hediger's supervisor, Tim Yamauchi

1  ("Yamauchi"), PRIDE's Chief Financial Officer, then instructed
2  Hediger to cancel further audit work concerning compliance with
3  the JWOD requirements on severely disabled employees.  The stated
4  reason was that his audit work was repetitive of work done by
5  PRIDE's Human Resources staff.

6       31.  Before termination of the audit, however, Hediger was
7  able to meet in a group with about 35 employees, some of whom
8  were classified by PRIDE as severely disabled.  He interviewed
9  four of such classified employees individually.  Three of the
10 four do not meet the definition of severely disabled.
11 Specifically, PRIDE's Fort Bliss employee S.M. was classified as
12 severely disabled, but she previously held other employment
13 positions in the El Paso area.  In addition, she has not had the
14 required CEA annual assessment performed by PRIDE to determine if
15 she is competitively employable.  Similarly, two other Fort Bliss
16 PRIDE employees, R.A. and G.R., had prior employment histories
17 with military or local employers and did not have their CEA
18 annual assessments completed.

19      32.  Hediger also had discussions with Loretta Grado
20 ("Grado"), PRIDE's Fort Bliss Human Resources Manager.  Grado
21 admitted to Hediger that she classified as severely disabled,
22 without further evidence of disability, employees who received
23 Workers' Compensation payments.  She also admitted to Hediger
24 that because of a review of PRIDE's direct labor hours conducted
25 by NISH in December 2008, she was "currently re-working [the CEA
26 files] per their request."  Upon information and belief, neither
27 PRIDE nor NISH has advised the government of any problems with
28 the CEAs or other concerns regarding PRIDE's compliance with the

1 | JWOD requirements.

2 |     33.   During Hediger's audit at Fort Bliss, he observed that
3 | PRIDE has very few handicapped parking spaces.  At its
4 | headquarters, Building 777, there are approximately 150 parking
5 | spaces with only 3 designated as "handicapped."  At 1200 Golden
6 | Key Circle, where PRIDE's Rehabilitation Services Group is
7 | located, of the approximately 240 total parking spaces, 7 are
8 | designated as handicapped.  Nonetheless, while at Fort Bliss,
9 | Hediger observed that many workers identified as PWDs drove
10 | vehicles to work.  In addition, he noticed that there are no
11 | elevators in Building 777, yet PRIDE's offices are located in the
12 | basement and on the 3rd floor of the building.

13 |     34.   Moreover, individual work shop locations, such as those
14 | in which the HVAC, Warehouse, Sign Shop and Electrical shops are
15 | housed, do not provide ramps or parking spaces for persons with
16 | disabilities.

17 |     35.   PRIDE knowingly omits direct labor hours worked by
18 | able-bodied temporary and contract employees in its Form 404
19 | Certification.  The Form 404 certification states: "Any direct
20 | labor performed by temporary employees or agencies is included."
21 | Although required to report direct labor hours worked by such
22 | employees, PRIDE has knowingly failed to include those hours so
23 | that the percentage of direct labor performed by people with
24 | severe disabilities will appear greater than the true percentage.

25 |     36.   Despite knowing that it does not meet the requirements
26 | to participate in the AbilityOne program, PRIDE submitted its
27 | Committee Form 404 for the Fiscal Year Ended September 30, 2008,
28 | and certified that it complied with the JWOD requirements.  As

such, PRIDE has knowingly and falsely represented that it is entitled to non-competitively bid government contracts in preference to other entities.  PRIDE's conduct violates the False Claims Act through expressed and implied false certifications and through submissions of ensuing false claims.

### B.    False Certification of Labor Costs

37.   In negotiating its government contracts, PRIDE provides specific information on the labor costs required to perform the tasks included within each contract line item.  As part of the data disclosed in negotiations, PRIDE provides the government with specific wage rates it agrees to pay employees.  The government considers this information in negotiating and determining a contract amount awarded to PRIDE.

38.   For example, PRIDE's Fort Bliss Contract incorporates by reference requirements for provision of cost and pricing data to the government.  See Contract, Section I, page 58, FAR §52.215-20; see also 41 U.S.C. § 254b, Truth in Negotiations Act ("TINA").  FAR section 52.215-20 provides that cost or pricing data be prepared and submitted in accordance with Table 15-2 of FAR § 15.408.  That Table specifies, among other requirements, that a contractor provide an "index, appropriately referenced, of all the cost or pricing data and information accompanying or identified in the proposal."  Table 15-2, I. General Instructions, B.  Similarly, TINA requires a contractor to certify that it has provided the government with "accurate, complete and current" cost or pricing data.  41 U.S.C. § 254b(2).

39.   Among other data, PRIDE provided the government with its labor costs to be incurred by its payment of wage rates as

1  set forth in its Collective Bargaining Agreement ("CBA").
2  Despite provision of that information, PRIDE has knowingly and
3  fraudulently paid employees, and continues to pay employees, less
4  than the amounts set forth in the CBA and less than the amounts
5  represented to the government as PRIDE's labor costs.

6          40.   PRIDE's failure to appropriately pay employees
7  permeates its performance of work under its contracts.  As to the
8  Fort Bliss contract, on April 24, 2009, Grado admitted to Hediger
9  that PRIDE had wage or benefit payment problems with 90 per cent
10  of employees at Fort Bliss.

11          41.   During Hediger's April 2009 audit work at Fort Bliss,
12  several employees informed him that their pay rates and job
13  titles had been changed without their notification.  For example,
14  employee Gary J. voluntarily showed his pay stub to Hediger.
15  Hediger noted that the header of the pay stub listed a base pay
16  rate of $16.18 per hour.  However, in the "Hours and Earnings"
17  section, the pay rate was shown as $12.16.  Hediger confirmed by
18  his own calculations that the employee's actual pay was based on
19  the rate of $12.16 per hour.

20          42.   On or about April 30, 2009, Hediger spoke to Karen
21  Seymour and Andrea Gonzalez, both payroll analysts, about Gary
22  J.'s payment discrepancy.  Shortly thereafter, a supplemental
23  payment check was issued to Gary J. for the difference identified
24  by Hediger.

25          43.   Similarly, Hediger also noted that Eva M., a sign shop
26  employee, was paid less than the amount listed as her base pay
27  rate.  Moreover, Eva M., as well as numerous other employees, had
28  accrued zero time for vacation and sick leave.

1    44.   Upon information and belief, PRIDE has failed to
2    provide supplemental payments to all affected employees who have
3    been inappropriately underpaid.  Additionally, PRIDE has failed
4    to advise the United States that it has underpaid employees and
5    has failed to repay the United States for inflated labor costs
6    for which it received payments but did not incur costs to justify
7    such payments.

8         **C.   False Billing of Unallowable and Duplicated Costs**

9         45.   PRIDE has knowingly and falsely billed the government
10   for costs in its Fort Bliss contract which were expressly
11   disallowed by the government during contract negotiations and
12   which were already reimbursed elsewhere in the contract.
13   Specifically, PRIDE added additional amounts (hereafter referred
14   to as "markups") to the costs for which one of its
15   subcontractors, Storeroom Solutions, Inc. ("SSI"), had purchased
16   items.  The markup amount was typically 20%.

17        46.   According to a letter, dated September 15, 2008, from
18   government contracting officer Hugo White to Fillmore Tellez at
19   NISH, PRIDE proposed during contract negotiations a 5% fee to be
20   applied to all material costs associated with CLIN 0001AY.
21   According to PRIDE, the fee was to reimburse the administrative
22   expense associated with PRIDE's purchase of materials under the
23   CLIN.   The government rejected PRIDE's proposed 5% fee because
24   the fee would create a cost plus an extra percentage-of-cost
25   payment for that CLIN.  This arrangement was prohibited because
26   the CLIN was explicitly a cost reimbursable line item of the
27   contract.   Instead, the government offered additional staffing as
28   a compromise to cover the administrative burden associated with

1    purchasing materials for that CLIN.  As a result, both parties
2    agreed to add three Full Time Equivalent ("FTE") workers to the
3    approved staffing component in the Contract.  Funding for the
4    three FTEs was expressly included in the final Contract language.

5         47.  However, despite the agreed-upon compromise, PRIDE
6    nonetheless applied a markup to all materials purchased by SSI
7    and then billed the government for such markups in violation of
8    the negotiated Contract terms.  For example, during May 2008, SSI
9    purchased 8 shower faucets at $31.02 each, for a total of
10   $248.16.  PRIDE then increased the $248.16 amount by an
11   additional 20%, consisting of 16% for a "management fee" and 4%
12   for "freight," creating a total of $297.80.  This $297.80 amount
13   was combined with all other materials purchased during that month
14   and billed to the government in one invoice totaling $450,579.48,
15   representing all expenses incurred on CLIN 0001AY for May 2008.
16   The invoice to the government did not contain any supporting
17   documentation to delineate the markup included in the $450,579.48
18   amount, thereby effectively concealing the fraud from the
19   government.

20        48.  In June 2008, Hediger performed an audit of PRIDE's
21   Fort Bliss contract and discovered substantial problems relating
22   to the costs claimed by Defendant.  As discussed above, Hediger
23   found that PRIDE was adding a markup to all items purchased by
24   SSI.  He reported that finding, both orally and in a memorandum,
25   during the week of June 23-27, 2008, to Yamauchi and Mary Flores
26   ("Flores"), PRIDE's Vice President, Integrated Facilities
27   Services.
28   ///

First Amended Complaint - Filed Under Seal        17

49.   PRIDE's management knew that the purchase of materials could not be marked up and that the three FTEs approved during the contract negotiations were to reimburse PRIDE for the administrative burden associated with the purchasing activities. Fred Smith, PRIDE's Senior Vice President, Operations ("Smith"), sent an e-mail to Yamauchi, informing him of this fact.  The e-mail stated:

Tim-

We cannot mark up the materials.  This was not an allowable cost and specifically directed not to be charged before we ever started the contract.  SSI is paid based on the savings they derive in sourcing for te [sic] parts.  We are able to "mark up" the price based on the addition of 3 FTEs instad [sic] of adding a mark up.  We don't populate those 3 FTE positions. We were questioned about this about 3 months ago by the customer.  We had to provide evidence that we were not marking up the price.

Email, dated June 24, 2008, from Smith to Yamauchi.  Nonetheless, despite PRIDE's knowledge of the Contract requirement, PRIDE has knowingly and fraudulently continued to charge a markup for materials purchased by SSI.

**D.   Solicitation of Kickbacks**

50.   In performance of the Fort Bliss Contract, PRIDE employee Cesar Silva, in concert with Sam De Avila ("De Avila"), an owner of Western Industrial Contractors, a PRIDE subcontractor, solicited kickbacks from two car dealers.  The kickbacks were demanded to award the car dealers PRIDE's business in purchasing trucks under the Contract.  On October 10, 2008, Relator Hediger confirmed that the solicitations for kickbacks occurred when he contacted the two car dealers involved in the kickbacks.

1    51.  Bob Brunk ("Brunk"), the Fleet Manager at Shamaley Ford
2  in El Paso, Texas, reported that De Avila had contacted him
3  regarding the purchase of 20 to 25 Ford F-250 pickup trucks.
4  Brunk reported that De Avila had stated that Casa Ford in El Paso
5  had offered him a $300-per-truck kickback if the vehicles were
6  purchased there.  Brunk said that De Avila wanted to know if
7  Shamaley Ford could match or beat Casa Ford's offer.  Brunk
8  advised Hediger that he was willing to sign a written statement
9  about the solicitation.

10    52.  On October 10, 2008, Hediger contacted Rick Kenly
11  ("Kenly"), the fleet manager at Casa Ford to confirm that car
12  dealer's kickback offer.  Kenly stated to Hediger that De Avila
13  and Silva had demanded a kickback of $300 per vehicle, but said
14  that he did not agree to pay the kickback.  Kenly also stated
15  that he did not want to repeat this information to others.

16    53.  Hediger reported the kickback fraud to Salvador Payan,
17  Chief of Staff for the Honorable Silvestre Reyes, Member of the
18  United States House of Representatives from Texas, and to Lt.
19  Colonel David McNutt, Fort Bliss Inspector General, in or about
20  mid-October 2008.

21    54.  Hediger subsequently confirmed on February 27, 2009,
22  that PRIDE did not purchase the trucks from either Ford dealer;
23  instead, it leased the vehicles through Enterprise Rent-A-Car in
24  El Paso for about $750,000.

25    **E.   False Closure of Service Orders and Retaliation Against
26         Relator Perez**

27    55.  For work under the Fort Bliss Contract, Relator Perez
28  was responsible for the proper input of labor hours into PRIDE's

First Amended Complaint - Filed Under Seal        19

and the government's computer systems.  From November 2008 to
January 2009, Perez observed that service orders under the
Contract were closed out with false information, including: the
amount of labor used, the amount of equipment used, and the
completion date.  The closures were directed by Beth Kirby,
Project Manager, Fort Bliss; Lonny Wright, Deputy Director of
Operations, Fort Bliss; and Cesar Silva, Facilities Manager, Fort
Bliss.

56.  Perez reported these problems to PRIDE management.  She
was suspended on March 13, 2009, and terminated on March 19,
2009.  Beth Kirby specifically told Perez that she was terminated
for disclosing the problems to the government (which, in fact,
Perez had not done).

57.  On March 17, 2009, Perez sent an email to Michael
Ziegler, CEO of PRIDE, addressing her concerns with the
operations at Fort Bliss.  She subsequently received a letter
from Tina Oliveira, Senior Vice President, Human Resources, dated
April 16, 2009, advising that Perez was terminated for using
another employee's password, as well as inappropriate
communications with the government.  Perez knows that numerous
PRIDE employees continue to use each other's passwords with the
knowledge and consent of PRIDE management.

**F.    Retaliation Against Relator Hediger**

58.  In April 2009, Relator Hediger planned and received
approval for an internal audit at Fort Bliss.  However, during
the course of the audit, Hediger was instructed to limit its
scope.  He was also advised that he could not perform a similar
audit at Edwards AFB.

1    59.   In June 2009, Hediger was interviewed by Moss Adams,
2    PRIDE's outside auditor.  As required by his position, Hediger
3    disclosed to Moss Adams fraudulent conduct by PRIDE.  In August
4    2009, Hediger further discussed the fraud with PRIDE personnel
5    and a partner at Moss Adams.

6    60.   In September 2009, as a result of complaining about the
7    fraud to PRIDE management and outside auditors and attempting to
8    stop it, Hediger was demoted.  Against his will, he was
9    transferred from his position as the internal auditor to a
10   position as an "accounting project analyst."  His supervisor was
11   changed from Yamauchi, the CFO, to Jeff Dern, the Controller.  In
12   his new position, Hediger did not have access to internal PRIDE
13   information and audits.

14   61.   In October 2009, as a result of blowing the whistle and
15   attempting to prevent the on-going fraud, Hediger was terminated.

16                              **Count I**

17   **False Claims Act 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B)**

18   62.   Relators repeat and reallege each and every allegation
19   contained in paragraphs 1 through 61, above, as though fully set
20   forth herein.

21   63.   This is a claim for treble damages and penalties under
22   the False Claims Act, 31 U.S.C. §§ 3729, et seq., as amended.

23   64.   Through the acts described above, Defendant has
24   knowingly presented or caused to be presented, false or
25   fraudulent claims within the meaning of 31 U.S.C. §
26   3729(a)(1)(A).

27   65.   Through the acts described above, Defendant has
28   knowingly made, used, or caused to be made or used materially

false or fraudulent records and statements within the meaning of 31 U.S.C. § 3729(a)(1)(B).

66.   The United States, unaware of the falsity of the records, statements and claims made or caused to be made by the Defendant, paid and continues to pay claims that would not be paid but for Defendant's unlawful conduct.

67.   As a result of the Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

68.   Additionally, the United States is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendant arising from their unlawful conduct as described herein.

### Count II

### False Claims Act 31 U.S.C. § 3729(a)(1)(G)

69.   Relators repeat and reallege each and every allegation contained in paragraphs 1 through 61, above, as though fully set forth herein.

70.   This is a claim for penalties and treble damages under the False Claims Act, 31 U.S.C. §§ 3729, et seq., as amended.

71.   Through the acts described above, Defendant has knowingly made, used, or caused to be made or used, false records or statement materials to knowingly conceal, knowingly and improperly avoid, or decrease, an obligation to pay or transmit money or property to the United States Government, within the meaning of 31 U.S.C. §3729(a)(1)(G).

72.   As a result, monies were lost to the United States through the non-payment or non-transmittal of money or property

1 | owed to the United States by the Defendant, and other costs were
2 | sustained by the United States.

3 |     73.  By reason of the Defendant's acts, the United States
4 | has been damaged, and continues to be damaged, in a substantial
5 | amount to be determined at trial.

6 |     74.  Additionally, the United States is entitled to the
7 | maximum penalty of $11,000 for each and every false record or
8 | statement knowingly made, used, or caused to be made or used to
9 | conceal, avoid, or decrease an obligation to pay or transmit
10 | money or property to the United States.

11 | **Count III**

12 | **False Claims Act 31 U.S.C. § 3730(h)**

13 |     75.  Relator Perez repeats and realleges each and every
14 | allegation contained in paragraphs 1 through 61, above, as though
15 | fully set forth herein.

16 |     76.  Through reporting, investigating, and attempting to
17 | stop the fraudulent conduct of Defendant, Relator Perez was
18 | threatened, discharged and discriminated against in the terms and
19 | conditions of her employment by PRIDE because of lawful acts done
20 | by the Relator in furtherance of an action under section 31
21 | U.S.C. § 3729.

22 |     77.  Relator is entitled to all relief necessary to make her
23 | whole, including reinstatement with the same seniority to the
24 | position she had before the unlawful termination, 2 times the
25 | amount of back pay lost, interest on the back pay, and
26 | compensation for any special damages sustained as a result of the
27 | discrimination.

28 | ///

**Count IV**

**Wrongful Termination in Violation of Public Policy and California Labor Code § 1102.5**

78.   Relator Perez repeats and realleges each and every allegation contained in paragraphs 1 through 61, above, as though fully set forth herein.

79.   In doing the things herein alleged, PRIDE threatened, harassed and discriminated against Perez in the terms and conditions of her employment and ultimately terminated that employment.

80.   This conduct was in violation of public policies pursuant to various state and federal laws, and to punish Perez for her opposition to PRIDE's fraudulent and illegal practices.

81.   In doing the things herein alleged, PRIDE violated California Labor Code § 1102.5 by retaliating against Perez, including creating an intolerable working environment and ultimately terminating her employment.

82.   As a direct and proximate cause of Defendant's wrongful conduct, Perez was not paid sums she had earned and was owed, and has sustained and will sustain the loss of salary, as well as interest thereon.   Perez has also suffered other damages, including, but not limited to, lost health insurance premiums, and other valuable employee benefits.   Additionally, the actions of PRIDE were carried out in a deliberate manner in conscious disregard of the rights of Perez and were malicious, despicable and were intended to harm her.   Relator is therefore entitled to punitive damages against PRIDE in an amount sufficient to punish Defendant, and to deter future similar misconduct.

## Count V

## False Claims Act 31 U.S.C. § 3730(h)

83.   Relator Hediger repeats and realleges each and every allegation contained in paragraphs 1 through 61, above, as though fully set forth herein.

84.   Through reporting, investigating, and attempting to stop the fraudulent conduct of Defendant, Relator Hediger was threatened, demoted, discharged and discriminated against in the terms and conditions of his employment by PRIDE because of lawful acts done by the Relator in furtherance of an action under section 31 U.S.C. § 3729.

85.   Relator Hediger is entitled to all relief necessary to make him whole, including reinstatement with the same seniority to the position he had before the unlawful termination, 2 times the amount of back pay lost, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination.

## Count VI

## Wrongful Termination in Violation of Public Policy and California Labor Code § 1102.5

86.   Relator Hediger repeats and realleges each and every allegation contained in paragraphs 1 through 61, above, as though fully set forth herein.

87.   In doing the things herein alleged, PRIDE threatened, harassed and discriminated against Hediger in the terms and conditions of his employment and ultimately terminated that employment.

///

First Amended Complaint - Filed Under Seal          25

88.   This conduct was in violation of public policies pursuant to various state and federal laws, and to punish Hediger for his opposition to PRIDE's fraudulent and illegal practices.

89.   In doing the things herein alleged, PRIDE violated California Labor Code § 1102.5 by retaliating against Hediger, including creating an intolerable working environment and ultimately terminating his employment.

90.   As a direct and proximate cause of Defendant's wrongful conduct, Hediger has sustained and will sustain the loss of salary, as well as interest thereon.  Hediger has also suffered other damages, including, but not limited to, lost health insurance premiums, and other valuable employee benefits. Additionally, the actions of PRIDE were carried out in a deliberate manner in conscious disregard of the rights of Hediger and were malicious, despicable and were intended to harm him. Relator is therefore entitled to punitive damages against PRIDE in an amount sufficient to punish Defendant, and to deter future similar misconduct.

## Prayer

WHEREFORE, Relators pray for judgment against the Defendant as follows:

1.   That Defendant cease and desist from violating the False Claims Act, 31 U.S.C. §§ 3729 et seq.;

2.   That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of 31 U.S.C. § 3729;

///

3.   That Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

4.   That, as a result of Defendant's unlawful employment actions, Relator Perez receive all relief necessary to make her whole pursuant to 31 U.S.C. § 3730(h);

5.   That, as a result of Defendant's unlawful employment actions, Relator Perez receive all relief necessary to make her whole pursuant to federal and state causes of action for wrongful employment conduct, retaliation, and termination;

6.   That, as a result of Defendant's violation of public policy and violation of California Labor Code § 1120.5, Relator Perez receive all relief necessary to make her whole pursuant to federal and state law, including punitive damages;

7.   That, as a result of Defendant's unlawful employment actions, Relator Hediger receive all relief necessary to make him whole pursuant to 31 U.S.C. § 3730(h);

8.   That, as a result of Defendant's unlawful employment actions, Relator Hediger receive all relief necessary to make him whole pursuant to federal and state causes of action for wrongful employment conduct, retaliation, and termination;

9.   That, as a result of Defendant's violation of public policy and violation of California Labor Code § 1120.5, Relator Hediger  receive all relief necessary to make him whole pursuant to federal and state law, including punitive damages;

10.   That Relators be awarded all costs of this action, including attorneys' fees and expenses; and

11.   That Relators recover such other and further relief as the Court deems just and proper.

First Amended Complaint - Filed Under Seal        27

1

**Demand for Jury Trial**

2      Pursuant to Rule 38 of the Federal Rules of Civil Procedure,

3  Relators hereby demand a trial by jury.

4  Dated: 9/22/10                      HIRST LAW GROUP, P.C.

5

6                                      By: _Michael G. Hirst_

7                                      Michael A. Hirst, Esq.
                                       Leslie S. Guillon, Esq.
                                       Attorneys for Relators
8                                      Timothy Hediger and
                                       Lois Perez
9

10                                     HIRST LAW GROUP, P.C.
                                       455 Capitol Mall, Suite 605
11                                     Sacramento, CA 95814
                                       Phone: (916) 443-6100
12                                     Fax:   (916) 443-6700

13

14

15

16

17

18

19

20                            .

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. [UNDER SEAL], | ) ) ) |
| Plaintiffs, | ) **PROOF OF SERVICE** |
| v. | ) ) **FILED UNDER SEAL** |
| [UNDER SEAL], Defendants. | ) ) ) ) |

Michael A. Hirst, Esq. CA Bar 131034
Leslie S. Guillon, Esq. CA Bar 222400
HIRST & CHANLER LLP
455 Capitol Mall, Suite 605
Sacramento, CA 95814
Tel: (916) 443-6100
Fax: (916) 443-6700
Attorneys for Qui Tam Plaintiff

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, ex. rel.   )   **PROOF OF SERVICE**
TIMOTHY HEDIGER and LOIS PEREZ,      )
                                     )
            Plaintiffs,              )
                                     )
        v.                           )
                                     )
PRIDE INDUSTRIES, INC., PRIDE        )   **FILED UNDER SEAL**
INDUSTRIES ONE, INC., and DOES 1     )   **PURSUANT TO 31 U.S.C.**
through 10,                          )   **§ 3730(B)(2)**
                                     )
            Defendants.              )
_____)

**PROOF OF SERVICE**

I am employed in the County of Sacramento, State of California. I am a citizen of the United States, over the age of eighteen (18) years, and not a party to the within action. My business address is 455 Capitol Mall, Suite 605, Sacramento, California, 95814.

On September 22, 2010 I served the following document(s), described as,

**First Amended Complaint and Demand for Jury Trial**

on each party as follows:

XX          (BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED)
I placed a true and correct copy of the foregoing document(s) in a sealed envelope addressed to each interested party as set forth above. I placed each such envelope, with postage thereon fully prepaid in compliance with certified mailings, for collection and mailing in one of the United States Post Office Boxes located in Sacramento, California.

Honorable Eric C. Holder
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue

XX          (BY PERSONAL SERVICE)
I delivered such envelope by hand to the offices of the addressee.

Benjamin B. Wagner
United States Attorney
Kurt A. Didier
Assistant United States Attorney
Eastern District of California
501 I Street, Suite 10-100
Sacramento, CA 95814

Executed this 22nd day of September 2010, at Sacramento California. I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Alli S. Meeker

1

2

3                         UNITED STATES DISTRICT COURT

4                   FOR THE EASTERN DISTRICT OF CALIFORNIA

5

6   UNITED STATES OF AMERICA,       )
    EX REL.  [UNDER SEAL],          )
7                                   )
                   Plaintiffs,      )  **PROOF OF SERVICE**
8                                   )
            v.                      )  **FILED UNDER SEAL**
9                                   )
    [UNDER SEAL],                   )
10                 Defendants.      )
                                    )
11  _____)

12

13

14

15

16

17

18

19

20      .

21

22

23

24

25

26

27

28

1  Michael A. Hirst, Esq. CA Bar 131034
   Leslie S. Guillon, Esq. CA Bar 222400
2  HIRST & CHANLER LLP
   455 Capitol Mall, Suite 605
3  Sacramento, CA 95814
   Tel: (916) 443-6100
4  Fax: (916) 443-6700
   Attorneys for Qui Tam Plaintiff
5

6

7                  UNITED STATES DISTRICT COURT

8            FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

   UNITED STATES OF AMERICA, ex. rel.  )   **PROOF OF SERVICE**
11 TIMOTHY HEDIGER and LOIS PEREZ,      )
                                        )
12            Plaintiffs,               )
                                        )
13        v.                            )
                                        )
14 PRIDE INDUSTRIES, INC., PRIDE        )   **FILED UNDER SEAL**
15 INDUSTRIES ONE, INC., and DOES 1     )   **PURSUANT TO 31 U.S.C.**
   through 10,                          )   **§ 3730(B)(2)**
16                                      )
              Defendants.               )
17 _____)

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am employed in the County of Sacramento, State of California.  I am a citizen of the United States, over the age of eighteen (18) years, and not a party to the within action.  My business address is 455 Capitol Mall, Suite 605, Sacramento, California, 95814.

On September 22, 2010 I served the following document(s), described as,

**First Amended Complaint and Demand for Jury Trial**

on each party as follows:

XX        (BY CERTIFIED MAIL - RETURN RECEIPT REQUESTED)
I placed a true and correct copy of the foregoing document(s) in a sealed envelope addressed to each interested party as set forth above.  I placed each such envelope, with postage thereon fully prepaid in compliance with certified mailings, for collection and mailing in one of the United States Post Office Boxes located in Sacramento, California.

Honorable Eric C. Holder
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue

XX        (BY PERSONAL SERVICE)
I delivered such envelope by hand to the offices of the addressee.

Benjamin B. Wagner
United States Attorney
Kurt A. Didier
Assistant United States Attorney
Eastern District of California
501 I Street, Suite 10-100
Sacramento, CA 95814

Executed this 22nd day of September 2010, at Sacramento California.  I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Alli S. Meeker